47 So.2d 236

## TENNESSEE VALLEY SAND & GRAVEL CO. v. PILLING.
### 8 Div. 823.

Court of Appeals of Alabama.
March 7, 1950.

Rehearing Denied March 28, 1950.

McDonnell & Jones, of Sheffield, and Williams & Williams, of Russellville, for appellant.

240

Guin & Guin, of Russellville, for appellee.

CARR, Judge.

Mrs. Hattie Pilling and F. H. McGuire each brought suit against the Tennessee Valley Sand and Gravel Company, a corporation. By agreement the two cases were consolidated for trial and submitted to one jury. In the court below there was a verdict and judgment in favor of each plaintiff.

The appeals in both cases are before this court, but are presented by separate records. Identical questions are submitted for our review by both records and briefs of counsel.

Mrs. Pilling and Mr. McGuire are adjoining landowners, each owning a forty-acre farm. The appellant owns lands north and east of these farms. The locations of the properties of the litigants and the flow of Little Bear Creek are such that appellees are lower riparian owners.

The appellant operates a sand and gravel pit and plant on a site located on its lands. The plaintiffs base their claim for damages to their lands on the alleged negligent operation of the defendant's plant.

In reviewing the assignments of error, we will adhere to the rule that if kindred questions are not presented and assignments are argued in brief in groups, if one is without merit, a consideration of the others may be pretermitted. Buffalo Rock Co. v. Davis, 228 Ala. 603, 154 So. 556; Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305; Christ v. Spizman, 33 Ala.App. 586, 35 So.2d 568; Ray v. Terry et al., 32 Ala.App. 582, 28 So.2d 916.

### Assignment No. 1

"The Court committed error in overruling the demurrers of the Defendant to the complaint."

Appellant presses three positions under this assignment:

(1) "3. The complaint fails to allege that the Defendant has breached any duty owing by the Defendant to the Plaintiff."

(2) "5. The complaint fails to allege any causal connection between the operation of the Defendant's plant or mining operations and the overflowing of the creek on the lands of the Plaintiff."

(3) "13. The complaint fails to allege that the negligent or wrongful conduct of the defendant's agents, servants, or employees was performed by them while acting in the line and scope of their employment as such."

We will point out some rules of pleading which have application to the indicated contentions.

"When the averred facts show the relation of the parties and duty in the premises, a breach thereof may be pleaded by way of conclusion (Alabama Fuel & Iron Co. v. Bush, 204 Ala. 658, 86 So. 541; Mobile Light & R. Co. v. Ellis, 209 Ala. 580, 96 So. 773), and, when the facts are alleged out of which a duty arises, the pleading need not charge the conclusion that the duty existed. Maddox v. Jones,

242

205 Ala. 598, 89 So. 38." Louisville & N. R. Co. v. Robinson, 213 Ala. 522, 105 So. 874, 875.

■ "A cause of action is made up of a duty and its breach. The duty—the relationship from which the duty springs—must be shown by the facts alleged; and the breach of the duty may be averred by way of a conclusion." Alabama Fuel & Iron Co. v. Bush, 204 Ala. 658, 86 So. 541, 542.

■ "In actions of tort, when, in the complaint, the duty to act is shown, the negligent performance of that duty may be alleged in the complaint in the most general terms." Sloss-Sheffield Steel & Iron Co. v. Prosch et al., 190 Ala. 290, 67 So. 516, 518.

"A simple negligence count of a complaint relying on the negligence of street railway employe, alleging that 'defendant's servants, agents, or employes in control or operating one of defendant's cars aforesaid over and along said railway,' negligently operated the same so as to cause the injury complained of, when construed with other allegations of defendant's ownership and operation of the railway at the place of injury, held to ·sufficiently allege that defendant's employes were acting within the scope of their employment." Alabama Power Co. v. Stogner, 208 Ala. 666, 95 So. 151.

■ In the case at bar the complaint, in pertinent parts for this review, alleges:

"Plaintiff's said tract is devoted to farming uses, and said stream flows through plaintiff's pasture. The defendant owns land along the upper reaches and tributaries of said creek, above the lands of the plaintiff, on which it conducts mining or sand and gravel digging operations, and has so conducted the same for more than one year prior to the bringing of this suit.

"The plaintiff alleges that the agents, servants or employees of the defendant in charge of its said mining or digging operations have so negligently or wrongfully conducted the same as to cause the stream bed to be filled with muck or debris

from the mining operations, thereby constituting an entrapment and danger to domestic animals; as to cause the creek to overflow repeatedly, thereby permanently depositing muck and debris from the mining operations on the lands of plaintiff and thereby damaging and rendering valueless much land of the plaintiff formerly valuable, to-wit; * * *

"And the plaintiff alleges that her said injuries were the proximate consequence of the negligence or wrongfulness of defendant's agents, servants or employees, as aforesaid and that the same were to her damage in the sum of Money as aforesaid, wherefore she sues."

The recited averments of the complaint illustrate our view that the pleader adhered to the rules which are followed by our courts, or at least to the substantial extent that the complaint is not subject to the incompleteness and deficiency which the demurrers seek to point out.

■ The appellate courts of this State apply the rule which provides that any error in overruling demurrers to a complaint is rendered harmless to the defendant by undisputed proof of the omitted averments. Smith v. Tripp, 246 Ala. 421, 20 So.2d 870; Britling Cafeteria Co. v. Irwin, 229 Ala. 687, 159 So. 228; Birmingham Water Works Co. v. Barksdale, 227 Ala. 354, 150 So. 139; Ridgely Operating Co. v. White, 227 Ala. 459, 150 So. 693; Fagan Peel Co. v. Harrison Co., 16 Ala.App. 470, 79 So. 144.

The above rule is without application if the complaint is so drawn that it does not state a cause of action. John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., 236 Ala. 548, 184 So. 275.

## Assignments Nos. 2 and 3

■ Assignment No. 2 seeks our review on the action of the court in overruling an objection to a question to one of appellee's witnesses. The question was not answered. Kelley v. State, 32 Ala.App. 408, 26 So.2d 633; Malone v. State, 16 Ala.App. 185, 76 So. 469.

## Assignment No. 4

A witness was asked: "Approximately how many times has it (Little Bear Creek) overflowed in the past fifteen months?" Appellant's objections were overruled. The witness did not answer. The question was restated with slight variation. Without further objections the witness replied: "I don't know. I never kept up with it, but it has overflowed two or three times anyway."

Objections should have been reinterposed to the second question. However, to avoid any indication to be technical, we will review the matter.

The point is stressed that the inquiry included a period of time for which the plaintiff could not recover any damages on account of the overflow of the stream. The question indicates that the information sought covered fifteen months from the time of trial. The answer of the witness was very indefinite as to his knowledge of the overflows. The inquiry could have been made more certain by cross examination.

In any event it appears that the inquiry was pertinent on the authority of Alabama Consol. Coal & Iron Co. v. Vines, 151 Ala. 398, 44 So. 377.

All this aside, it was not disputed in the evidence that the stream did in fact overflow following every hard rain. Wilson v. State, 31 Ala.App. 21, 11 So.2d 563; Stallings v. State, 249 Ala. 1, 32 So.2d 233. The defendant's evidence did not refute this proof. The factual contentions centered around the question of whether or not the operations of appellant's plant caused the creek bed to fill with muck and mud and thereby caused more frequent overflows.

## Assignment No. 5

Insistence is made here that the court should have sustained appellant's objection to a question propounded to one of appellee's witnesses. The witness finally answered, "I would not say." This reply was in no manner harmful to the objector. Minto v. State, 8 Ala.App. 306, 62 So. 376; Murray v. State, 17 Ala.App. 253, 84 So. 393.

## Assignments Nos. 6 and 7

A witness for the appellant was asked: "How did the deposits of muck in 1948 compare with the deposit of sand in previous years?" After objections were overruled, the witness did not answer. Kelley v. State, supra; Malone v. State, supra.

The question was repeated in this form: "How do the deposits from the overflow of the creek in 1948 compare with the deposits in previous years?" Objections were again interposed on the grounds that the query did not call for facts but rather a comparison. The objections were overruled and the witness replied: "Well, I would say that the sand didn't have as much effect on the ground, what come on there was the muck covering up the grass."

The latter ruling is made the basis of assignment No. 7.

The answer to this question should have been disallowed. The inquiry related to a material factual issue which was in dispute. The witness did not qualify as an expert, and his testimony in this aspect should have been confined to known facts and not conclusions.

The onus rests upon the appellant not only to show error by the record, but that such error probably injuriously affected his substantial rights. Garrett v. State, 248 Ala. 612, 29 So.2d 8; Brown v. State, 33 Ala.App. 152, 31 So.2d 652; Henderson v. Tennessee Coal, Iron & R. Co., 190 Ala. 126, 67 So. 414.

Just prior to the first question we have quoted the witness was asked: "Was there any considerable amount of deposit when the creek overflowed in the years before 1948? In other words, did it deposit much muck prior to 1948?" He replied: "It deposited sand, maybe a little sand, no muck to amount to anything."

It is apparent that the answer to the question to which the assignment relates gave no additional information on the matter. The effect of it was to reiterate what had just been stated, but in a different form.

Our appellate courts have held that it is not necessarily a reversible error to

allow a witness to state his conclusion when the witness has previously stated the facts upon which the conclusion is based. Haas Bros. v. Craft, 9 Ala.App. 404, 64 So. 163.

We hold that Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, has a purposeful application to the matter of instant concern.

## Assignment No. 8

■ The question here presented cannot be reviewed. No exceptions were reserved to the ruling of the court in sustaining plaintiff's objection to the question. Broglan v. Owen, 34 Ala.App. 480, 41 So.2d 434; Calvert v. J. M. Steverson & Sons Lumber Co., 244 Ala. 206, 12 So.2d 365.

## Assignment No. 9

■ One of the prime claims for damages was that the frequent overflow of the stream caused muck and filth to be deposited on appellee's pasture lands, thereby rendering the grass unwholesome for animal consumption. The proof supported the additional contention that, because of its continuous muddy condition, the water in the stream was unfit for stock to drink.

A witness testified that during the year just prior to the trial and for a period of about two months he pastured three of his mules in Mr. McGuire's pasture. He stated that the animals were in good condition when he first put them on the pasture. In this state of the record and referring to the mules, the witness was asked: "What was their condition when they came back?" Over objections he answered: "They was in poor condition."

It is a matter of common knowledge that scarce or unwholesome food and water will cause stock to lose weight and in the course of time their physical condition will become poor.

" * * * whatever logically tends to prove a given fact, is legally relevant, although standing alone. it would not be sufficient proof." Ensley Holding Co. v. Kelley, 229 Ala. 650, 158 So. 896, 900.

We hold that there was no error in the rulings of instant review.

## Assignments Nos. 10 and 11

Assignment No. 10 relates to a ruling on appellant's objection to a question. The question was not answered. Kelley v. State, supra; Malone v. State, supra.

■ Assignment No. 11 presents the action of the court in overruling appellant's motion to exclude an answer to a question. No objections were interposed to the question. The rule will not permit a party to wait until answer is made and then move to exclude the reply if it is responsive to the question. Machen et al. v. State, 16 Ala.App. 170, 76 So. 407; Washington v. State, 106 Ala. 58, 17 So. 546.

## Assignments Nos. 12 and 13

■ A veterinarian testified in appellant's behalf. On cross examination he was asked: "Would it be possible over that length of time for that water to cause the death of a mule?"

After objections were overruled, the witness replied: "I don't think it would kill a mule."

Aside from the application of the rule which allows free cross examination, it is apparent that the answer was favorable to the objector. Minto v. State, supra; Murray v. State, supra.

## Assignment No. 14

■ A witness testified that at the request of an official of the appellant he made a personal examination of the properties of the appellees. He testified that on this visit he did not find any discolored deposits on the grass or weeds in the pastures. He was then asked by appellant's counsel: "You went down to see whether there was or not?" On motion of appellee's attorney the court excluded this answer: "Went purposely for that business, for that business alone." Assuming that counsel should have been permitted to acquaint the jury with the occasion for the visit, the circumstances incident thereto were sufficiently disclosed by the prior statement of the witness.

## Assignment No. 15

■ It appears from the evidence that appellant's plant had been operated for

many years and it was formerly owned by the Spruce Pine Sand and Gravel Company. The appellant sought to introduce in evidence a decree of the court rendered in 1912 in a case styled M. N. Smith v. Spruce Pine Sand and Gravel Company. The plaintiff in this old case was appellee's father. We gather from the record here that this case involved some controversy between these prior owners of the properties. The tendered decree is not before us, and we have no way of determining the nature and character of this previous litigation. In any event, we cannot see how this rather ancient decree could have been pertinent to the litigated issues in the case at bar. Clearly it was res inter alios acta.

### Assignment No. 16

█ Appellant introduced as one of its witnesses Dr. W. L. Sowell who was connected with the State Toxicologist Department. The doctor testified that he charged the appellant $50 for two days attendance at court. In his closing argument to the jury, appellee's counsel referred to Dr. Sowell as "the slickhaired $50.00 witness." The court overruled the objection to the assertion and denied a motion to exclude it. The evidence supported the reference "$50.00 witness." We have no way of knowing how the doctor's hair was dressed. The court and jury were afforded this opportunity. If we should hold that an attorney should not make comment on the coiffure of a witness, we would not be authorized to charge error in overruling the objections or for a denial of a motion to exclude the entire statement. Louisville & N. R. Co. v. Hurt, 101 Ala. 34, 13 So. 130; Jordan v. State, 225 Ala. 350, 142 So. 665.

### Assignments Nos. 17 and 18

█ These assignments relate to the action of the court in refusing the affirmative charge in appellant's behalf.

Hereinabove we have made some references to the tendencies of the evidence. There can be no question of the sufficiency of the proof to sustain the contention that appellee's property was damaged by frequent overflows of the stream which caused sediment of muck and mud to settle on the surface of the lands. The point for close decision is whether or not this condition was the proximate consequence of the negligence of defendant's agents in the operation of its plant.

There was some evidence which supported the position of the appellant that the fill in the creek washed from surfaces of lands not in any way connected with the operation of its plant and in fact which lands it did not own.

According to the evidence of the plaintiff, about a year or two prior to the filing date of her suit, the appellant made some substantial changes in the methods of mining its sand and gravel, and it was this new system that caused the excess, rapid filling of the bed of the part of the stream which flowed through her property. This was the prime factual basis for the claim that within the year prior to the institution of her suit the damages resulted as averred. The actuality of this position would give rise to the cause of action, despite the fact that for many years prior thereto the appellant and his predecessors had been operating the plant at the same location.

We have read the record with much care and study. We acknowledge the aid that able briefs have rendered. It is our considered conclusion that the appellant was not due the general affirmative charge. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Stouts Mountain Coal & Coke Co. v. Tedder, 189 Ala. 637, 66 So. 619; City of Birmingham v. Estes, 229 Ala. 671, 159 So. 201, 97 A.L.R. 114; City of Birmingham v. Greer, 220 Ala. 678, 126 So. 859; Nauvoo Black Creek Coal Co. v. Johnson, 230 Ala. 174, 160 So. 242; American Tar Products Co. v. Jones, 17 Ala.App. 481, 86 So. 113.

### Assignments Nos. 19, 20, 21, 22 and 23

█ The questions presented here are raised in appellant's motion for a new trial.

The verdict of the jury was in favor of the plaintiff for $1000. The trial court ordered that the motion for a new trial be granted unless the plaintiff file with the

clerk of the court a remittitur reducing this amount to $800. This the plaintiff did and the motion was overruled.

Without further analysis of the evidence to illustrate our conclusion, we state that it is our opinion that we should not charge error to the lower court in his action in overruling the motion on the ground that the verdict was contrary to the evidence.

It is cogently urged in brief that the verdict was excessive even after its reduction in the manner indicated. The prime insistence in this aspect is stated in brief as follows: "There is no question but that the evidence in this case shows that the alleged nuisance which the Appellee complains of the Appellant maintaining, is not caused by any permanent structure erected by the Appellant but, if caused at all, is caused by the manner in which the Appellant has conducted its operations in its plant. In other words, if any nuisance has been maintained it is an abatable nuisance. Moreover, while there has been much evidence introduced by the Appellee to establish the difference in the value of her land one year before the suit was commenced and its value at the time the suit was commenced or at the time of the trial, it is submitted that there is no sufficient evidence in the case that there has been any permanent injury to the Appellee's land."

Appellant loses sight of the fact that there was evidence, though in conflict, that appellee did suffer permanent injuries to her property. According to her evidence the overflows of the stream caused much muck and mud to accumulate and remain on her land. This condition rendered the soil much less productive for pasture use. By its very nature this collection had become a permanent part of the surface of the soil.

There was evidence, also, that the condition of the stream made the water unwhole-some for animal consumption. This was an element to be considered in determining the depreciating effect on the market value of the pasture lands. Corona Coal Co. v. Hooker, 204 Ala. 221, 85 So. 477.

The factual issues in this case with reference to the ascertainment of damages are influenced and controlled by the following authorities: Drake's Exr. v. Lady Ensley Coal, Iron & Ry. Co., 102 Ala. 501, 14 So. 749, 24 L.R.A. 64, 48 Am.St.Rep. 77; Alabama Consol. Coal & Iron Co. v. Vines, 151 Ala. 398, 44 So. 377; Sloss-Sheffield Steel & Iron Co. v. McCullough, 177 Ala. 448, 59 So. 210; Corona Coal Co. v. Corry, 209 Ala. 503, 96 So. 581.

By applying the rules found in these authorities, we hold that the evidence is ample to sustain the action of the court in overruling the motion for a new trial after the remittitur had been filed.

### Cross Assignments.

The appellee complains at the ruling of the lower court in granting the motion for a new trial unless she file a remittitur. She presents this question by cross assignments of error. Title 7, Sec. 746, Code 1940; Supreme Court Rule 3.

It is to be noted that the court did not force the remittitur as was attempted in the case of London & Scottish Assur. Corp. of London, Eng. v. Smith, 229 Ala. 556, 158 So. 892. In the case at bar the motion for a new trial was ordered granted *unless* the remittitur be filed. The appellee was not compelled nor ordered to file the remittitur. She could have refused and prosecuted an appeal to this court on the judgment granting the motion. However, she elected to comply and the order overruling the motion followed. Clearly, by this action, she is in no position to urge error in the manner here attempted.

The judgment of the court below is ordered affirmed.

Affirmed.